USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/1/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MRINALINI, INC., a Delaware Corporation,

                    Plaintiff,

         -against-

VALENTINO S.p.A., an Italian Corporation and
VALENTINO U.S.A., INC., a Delaware
Corporation,

                    Defendants.

---

1:22-cv-2453 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
COMPEL ARBITRATION
AND STAYING ACTION**

MARY KAY VYSKOCIL, United States District Judge:

Mrinalini, Inc. is a New York based fashion designer and manufacturer that sued

Valentino S.p.A., an Italian fashion company, and its subsidiary, Valentino U.S.A., Inc.

(together, "Valentino"), asserting claims for copyright infringement, unjust enrichment,

misappropriation of trade secrets, conversion, breach of contract, and unfair competition.  In

particular, Mrinalini alleges that Valentino repeatedly stole its copyrighted fashion designs and

misappropriated the unique stitching technique that Mrinalini had developed to bring those

designs to life.

Valentino has moved to dismiss the complaint, for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6), under the doctrine of *forum non conveniens*, or

pursuant to an arbitration agreement between the parties.  ECF No. 46.  In the alternative,

Valentino seeks to compel arbitration and stay this action.  ECF No. 47 at 17 n.9.  Mrinalini

opposes the motion to dismiss [ECF No. 50] and has also filed a motion [ECF No. 33] to enjoin a

separate Italian arbitration that Valentino previously initiated, arguing that the claims brought in

that arbitration (like those brought here) are outside the scope of the relevant arbitration

agreement.  For the reasons stated below, Mrinalini's motion to enjoin the arbitration is denied,

1

and Valentino's motion is granted to the extent that it requests to compel arbitration and stay the case.[1]

## BACKGROUND[2]

Mrinalini, Inc. is a New York based business that designs and manufactures goods for fashion designers. AC ¶¶ 26-29. In 2006, Mrinalini began working with the Italian designer Valentino S.p.A. AC ¶ 30. In the early years, Mrinalini would generally manufacture goods for Valentino S.p.A. using original Mrinalini designs. AC ¶ 30. Things changed in 2014, however, when Mrinalini started functioning less as a designer and more as a contract manufacturer. AC ¶ 36. This meant that Valentino S.p.A. would provide Mrinalini with designs and Mrinalini would supply Valentino S.p.A. with clothing and other fashion items that were manufactured to reflect those designs. AC ¶ 37.

Mrinalini and Valentino S.p.A. memorialized this new relationship in 2014 when they agreed to "General Purchasing Conditions." AC, Ex. A (the "Purchasing Agreement"). This Agreement contained an arbitration clause, which provided that "[a]ny dispute that may arise connected to the Agreement as well as associated or connected to its execution, interpretation, enforcement, [or] validity, shall be referred . . . to a sole arbitrator appointed by the Milan

---

[1] Because the Court finds that all claims in this case are subject to a threshold question of arbitrability, which must be determined by the arbitrator, it need not address the *forum non conveniens* argument or reach the merits in connection with the Rule 12(b)(6) prong of Valentino's motion.

[2] The facts are drawn from the Amended Complaint [ECF No. 37] ("AC") and the exhibits attached thereto; the memorandum of law in support of the motion to enjoin the arbitration [ECF No. 34] ("Pl. Br."); the declaration of Mrinalini Kumari in support of the motion to enjoin the arbitration [ECF No. 34-1] ("Kumari Decl. I"); the memorandum of law in opposition to the motion to enjoin the arbitration [ECF No. 44] ("Def. Opp."); the memorandum of law in support of the motion to dismiss the Amended Complaint [ECF No. 47] ("Def. Br."); the declaration of Gian Paolo Coppola in support of Valentino's motion to dismiss the original complaint [ECF No. 31] ("Coppola Decl."); the declaration of Alexandra D. Valenti in support of the motion to dismiss the Amended Complaint [ECF No. 48] ("Valenti Decl.") and all accompanying exhibits; the memorandum of law in opposition to the motion to dismiss the Amended Complaint [ECF No. 50] ("Pl. Opp."); and the declaration of Mrinalini Kumari filed in support of Mrinalini's opposition to the motion to dismiss the Amended Complaint [ECF No. 50-1] ("Kumari Decl. II").

Chamber of Arbitration, pursuant [to] the Rules of the Milan Chamber of Arbitration."  AC, Ex.

A § 22.2.  Mrinalini served as a supplier for Valentino S.p.A. pursuant to the Purchasing

Agreement until November 2020.  Coppola Decl. ¶ 4.

At the end of the supply relationship, Mrinalini accused Valentino S.p.A. of breaching

the Purchasing Agreement and also engaging in non-contractual misconduct related to the

alleged copying of Mrinalini's designs and misappropriation of its unique stitching technique.

Coppola Decl. ¶ 5.  In February 2022, as negotiations over the dispute stalled, Valentino S.p.A.

initiated an arbitration in Italy, seeking a declaration that it does not owe Mrinalini any money

for using the swatches (*i.e.*, sample designs) that Mrinalini had provided to Valentino S.p.A.

Coppola Decl. ¶¶ 5-6.  Valentino S.p.A. also alleged that Mrinalini improperly registered various

designs with the United States Copyright Office.  Def. Br. at 4.  Around that same time,

Valentino S.p.A. filed a separate action in the Italian court in Milan, seeking a declaration that it

did not violate any of Mrinalini's trade secrets or commit any other non-contractual offense, such

as unfair competition.  Coppola Decl. ¶ 8.

## PROCEDURAL HISTORY

Mrinalini commenced this action by filing a complaint in March 2022.  [ECF No. 1]

("Compl.").  The complaint named Valentino S.p.A. and Valentino U.S.A. as defendants and

asserted claims of copyright infringement, unjust enrichment, misappropriation of trade secrets,

conversion, breach of contract, and unfair competition.  Compl. ¶¶ 43-169.  The claims flowed

from allegations that Valentino unlawfully copied Mrinalini's designs and stole the unique

3

stitching technique that Mrinalini had developed.  Attached to the complaint was the Purchasing

Agreement (Ex. A) and Mrinalini's copyright registrations (Ex. B).  [ECF No. 1-1-2].

Valentino moved to dismiss the case primarily on the grounds that the Purchasing

Agreement contained a clause which subjected the dispute to arbitration.[3]  [ECF Nos. 28-29].

Valentino also moved to dismiss under the doctrine of *forum non conveniens* and for failure to

state a claim.  In the alternative, Valentino requested that the Court stay this proceeding and

compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

Thereafter, Mrinalini filed an Amended Complaint, which made minor modifications to

the factual allegations and asserted additional claims for copyright infringement and unjust

enrichment.  [ECF No. 37].  While this Amended Complaint mooted Valentino's initial motion

to dismiss, *see Akinlawon v. Polanco*, No. 21-cv-2621, 2022 WL 3646004, at *1 (S.D.N.Y. Aug.

24, 2002), Valentino filed a new (nearly identical) motion premised on the same grounds.  [ECF

Nos. 46-48].  Mrinalini opposed that motion [ECF No. 50], and Valentino replied [ECF No. 51].

Meanwhile, Mrinalini moved to enjoin the pending Italian arbitration, arguing that the

dispute at issue in that arbitration did not fall within the scope of the Purchasing Agreement or

---

[3] It appears that Valentino's briefing seeks to dismiss on these grounds not only the claims against Valentino S.p.A., but also the claims against Valentino U.S.A.  While the latter was not a signatory to the Purchasing Agreement which contains the arbitration clause, that fact does not always resolve the issue of arbitrability.  *See Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007) (noting that the Second Circuit has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement").  In any event, the Court is not granting dismissal as to *any party* in this case, and there is no dispute that a court has authority to *stay* the entire case despite the fact that Valentino U.S.A. is not a party to the Purchasing Agreement.  *See Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013) ("Under its inherent power to manage its docket, a district court can stay a case pending arbitration when the arbitration may determine issues involved in the case, even when the parties to the stayed action are not the parties involved in the arbitration."); *Danisco A/S v. Novo Nordisk A/S*, No. 01-cv-10557, 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003) (explaining that just because the plaintiff "is not a party to the arbitration agreement does not render inappropriate a complete stay of proceedings in the instant action").

the arbitration clause contained therein.  [ECF Nos. 33-34].  Valentino filed an opposition [ECF

No. 44], and Mrinalini replied [ECF No. 45].[4]

## LEGAL STANDARDS

"In deciding motions to compel [arbitration], courts apply a standard similar to that

applicable for a motion for summary judgment."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220,

229 (2d Cir. 2016) (internal quotation marks omitted).  "The summary judgment standard

requires a court to consider all relevant, admissible evidence submitted by the parties and . . .

draw all reasonable inferences in favor of the non-moving party."  *Id.* (internal quotation marks

omitted).  The same standard applies "[i]n deciding a motion to enjoin arbitration."  *Kwatinetz v.*

*Mason*, 356 F. Supp. 3d 343, 347 (S.D.N.Y. 2018).

## DISCUSSION

### I.   JURISDICTION

In light of the Court's obligation to satisfy itself that it has jurisdiction, the Court first

notes that this case involves arbitrability under the Federal Arbitration Act ("FAA"), "which

requires an independent basis for subject-matter jurisdiction."  *Goldman, Sachs & Co. v. Golden*

*Empire Sch. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014).  In suits to compel and to enjoin

arbitration, courts evaluate jurisdiction "by looking through . . . to the parties' underlying

substantive controversy."  *Id.* (internal quotation marks omitted).[5]  Here, the Court concludes

---

[4] After briefing concluded, Mrinalini filed a supplemental submission to advise the Court that the Italian court dismissed the case filed by Valentino S.p.A.—a point potentially relevant to Valentino's *forum non conveniens* argument.  [ECF No. 52].  In response, Valentino noted that Valentino S.p.A. has filed an appeal of the Italian court's dismissal, suggesting that claims still existed within the Italian court system.  [ECF No. 53].  Additionally, Valentino provided an update on an arbitrability ruling by the Italian arbitrator.  [ECF No. 54, 57].  Valentino filed an unopposed motion to seal both the arbitrator's ruling and its letter summarizing that ruling, in light of a confidentiality agreement covering the arbitration.  [ECF Nos. 55-56].  By separate order, the Court has granted that motion to seal.

[5] Under Section 4, a party to an arbitration agreement may petition for an order to compel arbitration in a "United States district court which, save for [the arbitration] agreement, would have jurisdiction" over "the controversy between the parties."  9 U.S.C. § 4.

that subject-matter jurisdiction exists because this action and the now-pending arbitration both relate to federal copyright law—an issue over which the Court has federal question jurisdiction. *See* 28 U.S.C. § 1338 ("The district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.").

## II.    MOTION TO DISMISS OR STAY

Valentino argues that each of Mrinalini's claims before this Court should be dismissed in favor of arbitration or, in the alternative, that the Court should compel arbitration and stay this litigation.  This latter request can be achieved through the FAA, which vests this Court with authority to direct that "arbitration proceed in the manner provided for in [a written] agreement," 9 U.S.C. § 4, and which contemplates instances in which the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3.

"The agreement to waive a judicial forum in favor of arbitration is a matter of contract, and it is fundamental that a party cannot be required to submit to arbitration any dispute which he or she has not agreed to submit." *Loc. One Sec. Officers Union v. New York Univ.*, No. 19-cv-3143, 2019 WL 4254026, at *3 (S.D.N.Y. Sept. 9, 2019) (internal quotation marks omitted) (alterations adopted).  The question of "whether the particular dispute is subject to an arbitration agreement is typically an issue for judicial determination," but an exception to that general rule applies whenever the arbitration agreement "*clearly and unmistakably* elects to have the resolution of the arbitrability of the dispute decided by the arbitrator."  *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (emphasis added) (internal quotation marks omitted).

Here, the Purchasing Agreement contains a mandatory arbitration clause that applies to "[a]ny dispute that may arise connected to the Agreement as well as associated or connected to

6

its execution, interpretation, enforcement, [or] validity." AC, Ex. A § 22.2. The Purchasing Agreement thus reflects the clear intent of the signatories—Mrinalini and Valentino S.p.A.—to arbitrate at least *some* disputes. The question is whether the claims that Mrinalini asserts in this action fall within the scope of the Purchasing Agreement. Mrinalini maintains that it does not because the Purchasing Agreement relates to only one aspect of the parties' relationship—namely, Mrinalini's manufacturing of products based on Valentino's designs—while the dispute Mrinalini seeks to litigate here pertains to an entirely separate aspect of their relationship—specifically, Mrinalini's manufacturing of products using *its own designs*.

As an initial matter, the Court notes that the agreement between the parties to arbitrate is very broad in that it encompasses "any dispute . . . connected to the [Purchasing] Agreement." AC, Ex. A § 22. The Court, however, need not decide whether the current dispute falls within the scope of the Purchasing Agreement. The Agreement, by its terms, also expressly commits to arbitration "any dispute . . . associated or connected to its execution, interpretation, enforcement, [or] validity." AC, Ex. A § 22. Given that the parties disagree over what constitutes an arbitrable matter under the Purchasing Agreement, and addressing that dispute will necessarily entail the resolution of some "enforcement" or "interpretation" of the Purchasing Agreement, the parties have clearly and unmistakably assigned to the arbitrator the question of whether Mrinalini's claims set out an arbitrable dispute. *See Perry St. Software, Inc. v. Jedi Techs., Inc.*, No. 20-cv-4539, 2020 WL 6064158, at *8 (S.D.N.Y. Oct. 14, 2020) ("This argument [regarding the scope of the arbitration agreement] necessarily requires an interpretation of the arbitration agreement, which—as the agreement states—is an issue reserved for the arbitrator.").

This reading of the arbitration clause is reinforced by the broad language contained therein, which refers to "any dispute" that is "associated or connected" to the agreement's

"enforcement" or "interpretation."  The reference to "*any* dispute" is particular, and inclusive.

Recognizing as much, the Second Circuit has explained that "[t]he words 'any and all' are elastic

enough to encompass disputes over whether . . . a claim is within the scope of arbitration."

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1200 (2d Cir. 1996).  Additionally, the reference to

disputes that are "*associated or connected to*" the Purchasing Agreement signals a degree of

breadth that might not be present, for instance, in arbitration clauses that refer more narrowly to

issues "arising under" that agreement.  *See E & B Giftware, LLC v. Kinsbourne*, No. 14-cv-4709,

2015 WL 2330469, at *3 (S.D.N.Y. May 12, 2015) (contrasting the phrase "in connection with

or in relation to," with the narrower phrase of "arising under").

The only remaining question is whether the action should be stayed or dismissed pending

arbitration.  The FAA requires a district court, "on application of one of the parties," to stay an

action after determining that "any issue" in the action is "referable to arbitration."  9 U.S.C. § 3.

In *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), the Second Circuit explained that

"the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of

the claims in an action have been referred to arbitration and a stay requested."  *Id.* at 347.  In the

wake of *Katz*, there has been much debate about whether a stay is mandatory under the FAA

even when no stay is requested.  *Compare Bissonnette v. LePage Bakers Park St., LLC*, 49 F.4th

655, 664 (2d Cir. 2022) (Jacobs, J., concurring) ("[T]he FAA mandates a stay whether or not a

party requests one."), *with id.* at 674 (Pooler, J., dissenting) ("[W]here a party does not request a

stay . . . a district court retains authority to dismiss the action.").

Here, Valentino requested a stay, but only in the alternative to dismissal.  Certain courts

in this district have held that, under such circumstances, the Court "has discretion in determining

whether to stay or dismiss the case pending arbitration."  *Worthington v. JetSmarter, Inc.*, 18-cv-

12113, 2019 WL 4933635, at 8* (S.D.N.Y. Oct. 7, 2019).  But whether the stay is mandatory or discretionary makes no difference in this case.  The Second Circuit has counseled "that courts should stay litigation pending arbitration to avoid converting an otherwise unappealable interlocutory stay order into an appealable final dismissal order, thus enabling parties to proceed to arbitration directly."  *Dylan 140 LLC v. Figueroa*, 982 F.3d 851, 859 n.2 (2d Cir. 2020) (internal quotation marks omitted) (alterations adopted).  Moreover, "[a] stay is particularly appropriate where, as here, the parties must arbitrate the question of arbitrability" of Mrinalini's claims, "since any claims that the arbitrator determines are not arbitrable would proceed before this Court."  *Kuehne + Nagel Inc. v. Hughes*, No. 21-cv-8470, 2022 WL 2274353, at *8 (S.D.N.Y. June 23, 2022).

Because the plain language of the Purchasing Agreement delegates the question of arbitrability to the arbitrator, the Court finds it appropriate to compel arbitration and stay all proceedings in this action pending arbitration.[6]

## III.    MOTION TO ENJOIN ARBITRATION

Mrinalini has moved to enjoin the arbitration which Valentino S.p.A. initiated and which is currently pending in Italy.  The Second Circuit has recognized that a court has authority to enjoin arbitration of a claim where the parties "have not consented to arbitrate [that] claim."  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011).  The analysis of whether the parties have consented to arbitrate a claim is the same whether it relates to a petition

---

[6] The Court notes that, while the Second Circuit has not yet weighed in on the issue, courts in this district have generally held that Section 4 of the FAA precludes a district court from compelling arbitration outside of its district. *See, e.g.*, *Law Offices of Joseph L. Manson III v. Keiko Aoki*, No. 19-cv-4392, 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3, 2020) (collecting cases).  However, the Purchasing Agreement here does not dictate that arbitration must take place outside of this district.  Rather, the Purchasing Agreement provides that disputes "shall be referred . . . to a sole arbitrator appointed by the Milan Chamber of Arbitration, pursuant [to] the Rules of the Milan Chamber of Arbitration."  AC, Ex. A § 22.2.  And the Rules of the Milan Chamber of Arbitration provide flexibility regarding where the arbitration might occur.  *See* Coppola Decl., Ex. C ("[T]he Arbitral Council may fix the seat of the arbitration elsewhere [than Milan], taking into account the requests of the parties and any other circumstance.").

to compel or a petition to enjoin arbitration.  In this way the petitions are "two sides of the same coin." *J.P. Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 80 (S.D.N.Y. 2010).  The Court therefore concludes that it must deny the motion to enjoin arbitration (that Valentino previously initiated in Italy) for the same reason that it is granting the motion to compel arbitration (of the claims Mrinalini brought in this lawsuit): the Purchasing Agreement clearly and unmistakably assigns the issue of arbitrability to the arbitrator.[7]  This outcome is inescapable.

## CONCLUSION

For the foregoing reasons, Mrinalini's motion for oral argument [ECF No. 35] and its motion to enjoin the Italian arbitration [ECF No. 33] are denied, and Valentino's motion [ECF Nos. 46 and 28] to dismiss is granted in part, to the extent that Valentino's alternative request to compel arbitration and stay the case is granted.

The parties shall inform the Court of the status of arbitration by May 30, 2023, and every 90 days thereafter.  Additionally, within 10 days of completion of the arbitration, the parties shall file a joint status report on the docket in this case.

The Clerk of Court respectfully is requested to close all pending motions (ECF Nos. 28, 33, 35, and 46) and stay the case.

**SO ORDERED.**

**Date:   March 1, 2023**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[7] Because the Court concludes that the Purchasing Agreement delegates the issue of arbitrability to the arbitrator, and that the foreign arbitration should not be enjoined, the Court need not consider whether it has *the power* to enjoin an arbitration taking place abroad—a point that the parties dispute and on which there appears to be a dearth of caselaw.